**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35778**

| | | |
|---|---|---|
| **TIMOTHY HANSEN,** | ) | **2010 Unpublished Opinion No. 452** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: May 6, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Ronald E. Bush, District Judge.

Order of the district court summarily dismissing application for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

_____

PERRY, Judge Pro Tem

Timothy J. Hansen appeals from the district court's order summarily dismissing his application for post-conviction relief. We affirm.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

The factual and procedural background of the underlying criminal proceeding is set forth in *State v. Hansen*, Docket No. 29360 (Ct. App. June 23, 2004) (unpublished):

> In June 2001, police officers, acting on a tip regarding a methamphetamine lab, performed surveillance of residential property in Pocatello. The officers saw Hansen leave the property, where Hansen lived in a bus parked behind the main residence. The officers initiated a felony traffic stop based on a felony arrest warrant issued in Utah and because Hansen was driving without privileges. Hansen was arrested at gunpoint without incident.
>
> After being placed in the patrol car, Hansen was informed that the police had information about a methamphetamine lab at the residence. Without first

1

informing Hansen of his *Miranda*[1] rights, officers asked him whether the information was true. Hansen answered that there was no lab at the property. Officers replied that Hansen could clear up the information by walking them through his house. Hansen declined and was left in the patrol car while officers searched his vehicle and made preparations for towing. According to the officers' subsequent testimony, when they returned to the patrol car, Hansen offered that he would show them through the bus if they would not tow his vehicle. The officers agreed and took Hansen to the property.

Upon arrival at the property, officers presented Hansen with a consent-to-search form which, after an explanation of the form, Hansen signed. He authorized the officers to conduct a plain-sight search of the inside of the bus where he lived. Hansen was told he could withdraw his consent at any time. He did not agree to show them the main residence because he claimed that it belonged to someone else and he did not live in it. Around the outside of the bus, officers saw evidence of methamphetamine manufacturing. Inside the bus, officers discovered drug paraphernalia. Based on these discoveries, officers applied for and obtained a warrant to search the entire premises, including the inside of the main residence. The subsequent search revealed substances and equipment used in manufacturing methamphetamine, as well as methamphetamine itself. Hansen was charged with conspiracy to manufacture methamphetamine. I.C. §§ 37-2732(a)(1)(A), 37-2732(f).

Prior to trial, Hansen filed a motion to suppress all evidence obtained during the search pursuant to his consent as well as the search conducted under the warrant. Hansen contended that his consent was given involuntarily while under duress and without required *Miranda* warnings. After an evidentiary hearing, the suppression motion was denied. A jury found Hansen guilty as charged, and the district court sentenced Hansen to a fifteen-year term of imprisonment with five years fixed. A subsequent I.C.R. 35 motion for reduction of Hansen's sentence was denied. Hansen's judgment of conviction and sentence, as well as the denial of his Rule 35 motion, were upheld on direct appeal to the Idaho Supreme Court. *State v. Hansen*, 138 Idaho 791, 69 P.3d 1052 (2003). The Supreme Court acknowledged that the police had initially interrogated Hansen in violation of *Miranda*. The Court held, however, that the interrogation had ceased when officers left Hansen alone in the patrol car and that he was not being interrogated when he later volunteered to allow a search if the police agreed not to tow his vehicle.

After Hansen's sentencing and filing of the direct appeal in this case, Hansen filed a motion to compel the state to produce a videotape recording of Hansen's arrest for purposes of reviewing newly discovered evidence. Reference to a videotape of the arrest had previously been made by a witness for the state at trial. Additionally, police reports given to Hansen prior to trial indicated that a videotape recording of the arrest was available. Although Hansen had requested the tape through three pretrial discovery requests, the tape had not been given to

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Hansen prior to trial. Hansen's post-trial motion to compel was granted and, after further orders compelling production of the videotape, the prosecutor filed an affidavit indicating that neither he nor the officers involved in Hansen's arrest had any knowledge of the tape. Eventually, the videotape was discovered and made available to Hansen. Hansen thereafter filed a motion to dismiss his conviction or order a new trial on the ground that the videotape constituted newly discovered evidence. Hansen argued that the videotape could have affected the outcome of the suppression motion and, ultimately, the trial. Hansen also argued that the state's failure to disclose the videotape prior to trial was prosecutorial misconduct. Hansen's motion to dismiss his conviction or order a new trial was denied. The district court concluded that the evidence in the videotape was immaterial to the jury verdict and would not have produced an acquittal. However, Hansen's request for sanctions against the state for failure to produce the videotape in response to repeated discovery requests was granted and an award of fees was entered. On appeal, Hansen argues that the district court abused its discretion when it denied his motion for a new trial. Hansen requests that this Court vacate the district court's order and remand for a new suppression hearing with the possibility for a new trial.

This Court affirmed the district court's order denying Hansen's motion for a new trial, concluding that Hansen had not demonstrated a *Miranda* violation and that he "failed to show that his motion to suppress would have been granted and the outcome of trial would have been different had the videotape been disclosed." *State v. Hansen*, Docket No. 29360 (Ct. App. June 23, 2004) (unpublished).

While Hansen's appeal on his motion for a new trial was pending, he filed a second motion for a new trial on June 16, 2003. The district court treated Hansen's motion as an application for post-conviction relief and denied the motion. Hansen appealed, and the case was ultimately remanded to give the court an opportunity to address the merits of Hansen's second motion for a new trial. On remand, the district court denied Hansen's second motion for a new trial, which Hansen appealed.

While his second motion for a new trial was pending in the criminal case, and the denial of his first motion for a new trial was pending on appeal, on April 23, 2004 Hansen filed an application for post-conviction relief, together with a supporting affidavit, alleging several claims. On August 10, 2005, after issuing a notice of intent to dismiss Hansen's application and receiving Hansen's response, the post-conviction court dismissed the application in its entirety. Hansen appealed, and the case was consolidated with his appeal from the denial of his second motion for a new trial.

3

On March 12, 2007, Hansen filed a motion voluntarily dismissing his appeal from the denial of his second motion for a new trial, which was granted. With regard to Hansen's appeal of the dismissal of his application for post-conviction relief, the State, on June 4, 2007, filed a motion for remand. The Idaho Supreme Court granted the State's motion and remanded the case to the district court for purposes of providing Hansen with an opportunity to respond to the proposed dismissal of Hansen's claims of prosecutorial misconduct, ineffective assistance of counsel, and Fifth and Sixth Amendment violations, as well as consideration of Hansen's motion for appointment of counsel. The Court dismissed the appeal without prejudice.

While the consolidated cases were pending on appeal, Hansen filed a successive application for post-conviction relief on February 18, 2007. On April 2, 2007, the court issued its notice of intent to dismiss Hansen's application. Hansen filed a response to the court's order.

On remand of the original application for post-conviction relief, the post-conviction court appointed counsel to represent Hansen. The parties stipulated that a hearing was unnecessary and that their arguments would be submitted in writing. The parties also agreed that the only issues before the court were Hansen's claims of prosecutorial misconduct, ineffective assistance of counsel, and Fifth and Sixth Amendment violations. An order was entered pursuant to this stipulation. The parties then submitted briefing to the court. Indicating that it had reviewed the briefing, the original and successive applications, and the records of the underlying criminal case as well as the appeals, the court entered an order summarily dismissing all of Hansen's post-conviction claims. Hansen now appeals.

## II.

## ANALYSIS

An application for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008); *see also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like the plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). "An application for post-conviction relief differs from a complaint in an ordinary civil action[.]" *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004) (quoting *Goodwin*, 138 Idaho at 271, 61 P.3d at 628)). The application must contain

4

much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The application must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the application. I.C. § 19-4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

Idaho Code § 19-4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of an application is the procedural equivalent of summary judgment under I.R.C.P. 56. "A claim for post-conviction relief will be subject to summary dismissal . . . if the applicant has not presented evidence making a prima facie case as to each essential element of the claims upon which the applicant bears the burden of proof." *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009) (quoting *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998)). Thus, summary dismissal is permissible when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629. Summary dismissal of an application for post-conviction relief may be appropriate, however, even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

On review of dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of material fact exists based on the pleadings, depositions, and admissions together with any affidavits on file. *Rhoades v. State*, 148 Idaho 247, 220 P.3d 1066 (2009); *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993). However, "while the underlying facts must be regarded as true, the petitioner's conclusions need not be so accepted." *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069 (quoting *Phillips v. State*, 108 Idaho 405, 407, 700 P.2d 27, 29 (1985)); *see also Hayes v. State*, 146 Idaho

353, 355, 195 P.3d 712, 714 (Ct. App. 2008). As the trial court rather than a jury will be the trier of fact in the event of an evidentiary hearing, summary dismissal is appropriate where the evidentiary facts are not disputed, despite the possibility of conflicting inferences to be drawn from the facts, for the court alone will be responsible for resolving the conflict between those inferences. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Hayes*, 146 Idaho at 355, 195 P.3d at 714. That is, the judge in a post-conviction action is not constrained to draw inferences in favor of the party opposing the motion for summary disposition but rather is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Id.*

Hansen's claims generally present allegations which center around James Burt, a jailhouse informant, as well as the videotape of Hansen's arrest. Hansen argues that Burt was placed in jail with Hansen as an agent of the State in order to elicit incriminating statements; that Burt's testimony at Hansen's trial was inconsistent with his testimony at the trial of Steven King, a co-conspirator; that Burt was an accomplice; and, that Burt falsely testified regarding his motivation for testifying against Hansen and that the prosecutor knew of this alleged false testimony. With regard to the videotape, Hansen contends that it demonstrates that he was interrogated without first receiving his *Miranda*[2] warnings, and that the State withheld the videotape, which had substantial impeachment value, in violation of his due process rights.[3]

## A.    *Napue* **Claim**

As noted, Hansen contends that Burt falsely testified regarding his motivation for testifying and that the prosecutor failed to correct that false testimony. The State may not knowingly use false evidence, including false testimony, to obtain a conviction. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a *Napue* claim, Hansen must demonstrate: (1) the testimony was actually false; (2) the prosecutor knew or should have known the testimony was actually false; and (3) the testimony was material. *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006).

The post-conviction court summarized the alleged facts and argument as follows:

---

[2]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]    At oral argument, Hansen's appellate counsel withdrew his claim regarding a Sixth Amendment violation pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), as well as his *Miranda* claim. Counsel agreed with the State that, based upon the procedural posture of the case, those claims were barred. Thus, we do not address them further.

Hansen contends that Burt misled the jury when he stated that he wasn't receiving any sort of favorable treatment in exchange for his testimony. In both Hansen's and King's trials, Burt asserted that his only motive in testifying was to sever his ties to the drug community and separate himself from the drug culture. Then, two weeks after Hansen's trial, Burt's felony drug possession charge and the misdemeanor paraphernalia charge were dismissed. Hansen asserts that because Burt's charges were not dismissed until after Hansen's trial "it suggests a due process violation given that Hansen was unable to impeach Burt's testimony at trial" and further, "it could reasonably be inferred from Burt's testimony at Hansen's trial that he lied about receiving special treatment from the prosecution and that [the prosecutor] failed to correct that lie."

The court determined that Hansen had failed to present evidence in support of his claim that Burt lied about not receiving favorable treatment, or that the prosecutor failed to correct statements he knew to be false. The court concluded that the fact that Burt's charges were dismissed after Hansen's trial, by itself, did not establish a prima facie case that Hansen's due process rights were violated.

Hansen did present evidence that Burt's charges were dismissed after Hansen's trial and that Burt was on felony parole when he incurred new charges, but that his parole was never revoked. He contends that this is sufficient evidence to warrant an evidentiary hearing because, based upon the timing of Burt's charges being dismissed, it "appears" that Burt was receiving compensation for his testimony. Hansen asserts that he is entitled to a reasonable inference that Burt had a deal with the State, which he lied about under oath, and that the prosecutor failed to correct that lie.

However, the State submitted an affidavit of Burt's trial counsel, which the post-conviction court relied upon in dismissing Hansen's claims, that directly contradicts Hansen's allegation that Burt had an agreement with the State[4] for favorable treatment in exchange for his testimony. Burt's counsel indicated that he had been involved in negotiations with the prosecutor's office, and that prior to Hansen's trial Burt did not have a plea agreement in place. Burt's counsel specifically recalled having a discussion with Burt where he "warned him that the state has not offered any consideration in exchange for his testimony, but he chose to testify despite [counsel's] conversation with him." He further stated that "[n]o promises or special

---

[4] Neither Burt nor the prosecutor submitted affidavits on this issue.

consideration were given to Mr. Burt by the State of Idaho or [the prosecutor] in exchange for his testimony at Mr. Hansen's trial."

Moreover, Amy Fluckiger, an accomplice in the conspiracy to manufacture methamphetamine, testified on direct examination that she had been granted immunity from prosecution in exchange for her testimony against Hansen. In other words, she testified that she did have a deal with the State, and the State brought that out on direct examination. The State asserted at oral argument that it is not reasonable to infer that the prosecutor would, on the one hand, elicit Fluckiger's testimony that she had a deal with the State and, on the other hand, try to cover up or fail to bring to light a deal that Burt had with the State.

Although this Court has been invited to make its own inferences as to whether Burt had a deal with the State that he lied about under oath, we decline to do so. As noted above, because the trial court rather than a jury will be the trier of fact in the event of an evidentiary hearing, summary dismissal is appropriate where the evidentiary facts are not disputed, despite the possibility of conflicting inferences to be drawn from the facts, for the court alone will be responsible for resolving the conflict between those inferences. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Hayes*, 146 Idaho at 355, 195 P.3d at 714. That is, the judge in a post-conviction action is not constrained to draw inferences in favor of the party opposing the motion for summary disposition but rather is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Id.* The post-conviction court's findings and conclusions are supported by the record, and the inferences drawn by the trial court are reasonable. Accordingly, Hansen has failed to show that the court was in error.

**B.     Ineffective Assistance**

Hansen contends that his trial counsel rendered ineffective assistance. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the

applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. This Court has long-adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). Hansen makes several allegations of ineffective assistance of counsel, each of which will be addressed in turn.

### 1. Obtain trial transcript/impeach testimony

Hansen's trial commenced one week after that of his co-conspirator, Steven King. Burt testified at both King's and Hansen's trials. Hansen's trial counsel requested a transcript of King's trial, which the court granted if it was available. However, the court also indicated that it would not continue the trial. Recognizing that the same witnesses and evidence would be used at both trials, Hansen's trial counsel attended King's trial and made his own notes. Hansen's trial counsel did not procure the King trial transcript for use at Hansen's trial. Hansen argues that trial counsel was ineffective for failing to obtain a transcript of King's trial such that he could impeach Burt regarding inconsistencies in his testimony between the two trials. Hansen claims that counsel was deficient because he knew Burt's testimony at Hansen's trial was inconsistent with his previous testimony.

Hansen points to one alleged inconsistency in Burt's testimony. At King's trial, Burt testified that he saw Robert Zazweta heating up a beaker of red phosphorous inside the bus, and that Hansen and others were present in the bus at that time. At Hansen's trial, Burt described the same trip to the bus but specifically testified that he saw Hansen "over a burner drying the meth." Hansen claims that this was an inconsistency that would have aided Hansen's defense because his mere presence does not make him a co-conspirator.

The State argues that Burt's testimony was not inconsistent because while he provided more detail at Hansen's trial regarding Hansen's activities and his role in the production process, his testimony was not contradictory to the testimony given at King's trial. Indeed, the fact that a witness testifies in greater detail at a subsequent trial does not render testimony at a prior trial inconsistent. This is especially true in light of the fact that specific questions were asked of Burt at Hansen's trial regarding Hansen's involvement in methamphetamine production to which he gave specific answers. Contrary to his argument, Hansen has not shown a "marked difference"

9

in testimony such that an evidentiary hearing should have been granted on this issue.  The testimony was not inconsistent.  Moreover, as the post-conviction court pointed out, Hansen's trial counsel attended King's trial and made his own notes.  Hansen has failed to show that trial counsel rendered deficient performance.

### 2. Obtain accomplice jury instruction

Hansen contends that the failure to obtain the King trial transcript also affected the instructions given to the jury because Burt should have been listed, in addition to Fluckiger, as an accomplice.  Hansen asserts that Burt's testimony at the King trial demonstrates that he was an accomplice.  He argues that trial counsel was deficient in failing to confront Burt with his prior testimony, which resulted in a failure to obtain an accomplice jury instruction.  Hansen claims that had such an instruction been given, Burt's testimony could not have been used to corroborate Fluckiger's testimony.

Hansen's claim rests on the following testimony:

| | |
|---|---|
| Prosecutor: | Did Mr. King ever tell you where he was manufacturing methamphetamine in December of 2000? |
| Burt: | No, he didn't, but I was a little bit involved in it at that time myself. |
| Prosecutor: | How's that? |
| Burt: | I was helping Amy who was helping Steven, Amy Fluckiger. |
| Prosecutor: | Have you ever been to 7695 Pocatello Creek Road? |
| Burt: | Yes, I have. |
| Prosecutor: | And what is there at that place? |
| Burt: | It's a place to manufacture methamphetamine. |
| Prosecutor: | Whose house specifically is it? |
| Burt: | Jerry Windle's. |

Burt also testified that he and his fiancée heard on a police scanner that police were going to raid Fluckiger's house and that his fiancée told Fluckiger that the police were coming.

The State contends that even assuming Burt's testimony at the King trial raised a genuine issue of material fact regarding his status as an accomplice, Hansen did not demonstrate prejudice by any failure to include Burt in the accomplice jury instruction.  The State argues that there is sufficient corroborative evidence, independent of accomplice testimony, which connected Hansen to the commission of the crime.  We agree.

This Court recently addressed I.C. § 19-2117, regarding corroboration of accomplice testimony, in *State v. Stone*, 147 Idaho 890, 891-92, 216 P.3d 648, 649-50 (Ct. App. 2009).

Idaho Code § 19-2117 provides:

> A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

In *Stone*, we set forth the policy and standards of the corroboration requirement as follows:

> "This statutory corroboration requirement is intended to protect against the danger that an accomplice may wholly fabricate testimony, incriminating an innocent defendant in order to win more favorable treatment for the accomplice." *Matthews v. State*, 136 Idaho 46, 49, 28 P.3d 387, 390 (Ct. App. 2001). The corroborating evidence required by I.C. § 19-2117 need not "be sufficient to sustain a conviction on its own, nor must it corroborate every detail of the accomplice's testimony." *State v. Mitchell*, 146 Idaho 378, 382, 195 P.3d 737, 741 (Ct. App. 2008). The corroborating evidence may be slight, need only go to one material fact, and may be entirely circumstantial. *Id.* In addition, statements attributable to the defendant may serve as the necessary corroboration. *Id.* 146 Idaho at 382-383, 195 P.3d at 741-742. The corroborating evidence is sufficient if it tends to connect the defendant to the crime independent of the accomplice's testimony. *State v. Aragon*, 107 Idaho 358, 364, 690 P.2d 293, 299 (1984).

*Stone*, 147 Idaho at 891-92, 216 P.3d at 648-49.

In *Stone*, four men, including Stone, were charged relative to the beating and robbery of the former landlord of one of the men. According to the State's evidence, two of the men beat and robbed the landlord under the guise of being interested in renting an apartment, and Stone drove the vehicle to and from the apartment. The district court noted that the State's evidence against Stone, independent of the accomplice testimony, consisted of Stone's unsolicited knowledge of the names of individuals involved and the fact that he initially told investigators that he was not in Blackfoot when the crime occurred, which he later recanted. *Stone*, 147 Idaho at 892, 216 P.3d at 650. Stone also told investigators that all he knew was that the incident occurred because "a guy owed somebody some money," which Stone claimed he learned from the news. *Id.* The district court characterized this evidence as "tenuous" and "threadbare" but found that the inferences from the corroborating evidence tended to connect Stone to the crime. *Id.* at 892-93, 216 P.3d at 650-51.

This Court agreed with the district court's characterization of the strength and sufficiency of the corroborating evidence and acknowledged the standard that "corroborative testimony may be 'slight' and need only 'tend' to connect the defendant to the crime." *Id.* at 893, 216 P.3d at

11

651. With regard to Stone's assertion that he learned of the incident on the news, this Court stated:

> Stone's unsolicited knowledge of the names of the individuals involved, and the motive for the crime, could reasonably be inferred to indicate more involvement than a passive recipient of news. Even a highly plausible innocent explanation of the evidence "does not strip the evidence of its corroborative character." *See Hill*, 140 Idaho at 630, 97 P.3d at 1019.

*Stone*, 147 Idaho at 893, 216 P.3d at 651.

Hansen contends that the only thing that connects Hansen to the "conspiracy" is the testimony of Fluckiger and Burt. This contention is belied by the record. The officers testified that they had observed Hansen at two locations (the Windle property and the Fluckiger residence) where evidence of methamphetamine was later discovered. The officers also testified that on December 7, 2000, they observed Hansen and co-conspirator King at the Windle property. Hansen left the property with a propane bottle, filled it up, and met King at a campground. Upon leaving the campground, King was arrested and officers discovered counter surveillance equipment and a piece of paper containing what appeared to be a recipe consistent with the manufacture of methamphetamine. King had attempted to tear up the paper and put it into his mouth and stuff it underneath the seat of the police car. One of the officers also testified that the paper had a "brown coloring on it which appeared to be iodine stains." On the same day, Hansen purchased a large amount of iodine.

Hansen contends that the "legal and innocent acts" of filling up a propane bottle and buying iodine, the fact that King was found with evidence of methamphetamine manufacturing, and the fact that evidence was found that methamphetamine might have been manufactured on a bus where "Hansen was, for an unknown amount of time, present" all fail to corroborate the accomplices' testimony that Hansen conspired to manufacture methamphetamine. However, as noted in *Stone*, "corroborative testimony may be 'slight' and need only 'tend' to connect the defendant to the crime." *Stone*, 147 Idaho at 893, 216 P.3d at 651. There is more corroborative evidence in this case than was present in *Stone*. With regard to Hansen's contention that filling up a bottle of propane and buying iodine are legal and innocent acts, "[e]ven a highly plausible innocent explanation of the evidence 'does not strip the evidence of its corroborative character.'" *Id.* (quoting *State v. Hill*, 140 Idaho 625, 630, 97 P.3d 1014, 1019 (Ct. App. 2004)). The corroborating evidence is sufficient to tend to connect Hansen to the crime independent of the

accomplices' testimony. *See Aragon*, 107 Idaho at 364, 690 P.2d at 299. Therefore, Hansen has failed to demonstrate that the post-conviction court erred in summarily dismissing his claim because he suffered no prejudice in any failure to include Burt as an accomplice.

### 3. Motion to suppress

Hansen contends that trial counsel was ineffective for failing to move to suppress the testimony of jailhouse informant Burt because it was obtained in violation of *Massiah v. United States*, 377 U.S. 201 (1964). In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State,* 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Id.*

As noted above, Hansen withdrew his claim regarding a direct Sixth Amendment violation pursuant to *Massiah*. The alleged direct constitutional violation was the only iteration of his claim that was presented to the post-conviction court. Hansen did not present any argument below relative to an ineffective assistance of counsel claim for failure to move to suppress Burt's testimony. Thus, the court did not rule on that issue. We conclude, however, that even if a motion to suppress had been filed, such a motion would not have been successful.

In order to establish the existence of a *Massiah* violation, Hansen must show that Burt was recruited by the State and that he deliberately elicited incriminating statements from Hansen in the absence of Hansen's counsel. *See Massiah*, 377 U.S. 201; *see also Maine v. Moulton*, 474 U.S. 159 (1985); *State v. LePage*, 102 Idaho 387, 392, 630 P.2d 674, 679 (1981). Hansen must "demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986); *see also State v. Fields*, 127 Idaho 904, 910, 908 P.2d 1211, 1217 (1995).

With regard to the element that the informant must take some action, beyond merely listening, in order to deliberately elicit incriminating statements, Hansen points to his testimony at the hearing on his second motion for a new trial where he stated: "They took Mr. Burke (sic) and then on November 1st they moved him down in the trustee pod in a bed right next to mine, and Mr. Burke (sic) is down there following me around asking me questions." Hansen contends

13

that this demonstrates that Burt was not merely a passive listener and that he deliberately elicited incriminating statements.

When placed in context of Hansen's entire testimony at the hearing, it becomes apparent that Hansen did not testify that Burt elicited incriminating statements. Rather, Hansen *denied* having made any incriminating statements to Burt at all. In denying Hansen's motion for a new trial, the district court, reviewing the evidence presented by Hansen, stated: "Additionally, Hansen's own testimony at the hearing does not show that Burt asked him any incriminating questions or otherwise took affirmative action to elicit any incriminating statements from Hansen." Hansen presented no admissible evidence in his post-conviction proceedings as to what specific questions were asked, what specific answers were given, and whether any of the questions or answers were incriminating in nature. Therefore, Hansen has failed to demonstrate deficient performance or prejudice as a motion to suppress would not have been successful.

### 4. Police report

Hansen contends that trial counsel was ineffective for failing to call the author of a police report documenting an interview with a confidential informant, CI-397, and have the report admitted into evidence. In April 2001, police officers conducted a voluntary interview with CI-397 regarding the informant's knowledge of methamphetamine production in the Pocatello area. The informant relayed information primarily regarding Steven King and his involvement in the manufacturing of methamphetamine. The informant told police that Steven King normally manufactures 20-30 grams of methamphetamine at a time, that King lives at Jerry Windle's residence "in Timmy Hansen's old bus," that he witnessed and assisted King in the manufacture of methamphetamine, and that King usually obtained phosphorous from Robert Zazweta.

The post-conviction court acknowledged trial counsel's affidavit wherein counsel stated that he reviewed all potential witnesses and exhibits for use at trial with Hansen and discussed with him the reasons for doing so. Trial counsel also stated that he had legitimate strategic or tactical purposes not to call certain witnesses or use the police reports, and that Hansen agreed with these decisions. The court noted that Hansen did not present any admissible evidence that he disagreed with trial counsel's decisions at the time of his trial.

With respect to CI-397, the court noted that the informant had described facts linking Hansen's residence to the manufacture of methamphetamine and thus "had the potential to compound the evidence against Hansen and buttress the case of the State." The court,

14

recognizing that Hansen had the burden of overcoming a strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance, concluded that Hansen had failed to demonstrate deficient performance or any resulting prejudice. The court's findings and conclusions are supported by the record.

Hansen contends, however, that trial counsel's statement that he did not use the police reports for a strategic or tactical purpose is "utterly inadequate" to rebut Hansen's allegations. Hansen asserts that this "boilerplate affidavit is simply a string of desultory conclusions unsupported by facts and thus devoid of any meaningful content." He claims that because trial counsel did not point to a precise decision as to why he did not use the police report, his affidavit should not be given any weight. Hansen also claims that because trial counsel did attempt to elicit evidence from the police report at trial, albeit from the wrong police officer, counsel's "boilerplate" assertion of a strategic or tactical reason cannot be believed. While Hansen maintains that the police report contains exculpatory evidence, it also contains, as noted by the court, inculpatory evidence linking Hansen's residence to the manufacture of methamphetamine. As the post-conviction court determined, Hansen has the burden of overcoming a strong presumption of reasonable professional assistance, and he failed to meet that burden or otherwise show resulting prejudice.

Finally, although not addressed by the parties, we further note that Hansen has failed to demonstrate that the statements within the report itself would have been admissible. While there is an exception to the hearsay rule for public records and reports pursuant to Idaho Rule of Evidence 803(8), there remains an issue of hearsay within hearsay, I.R.E. 805, with respect to the statements that the informant made to the police. Hansen would have to show that the informant's statements themselves "conform with an exception to the hearsay rules" in order to have them admitted into evidence. *See* I.R.E. 805.

## C.    Prosecutorial Misconduct

Hansen argues that the prosecutor violated his due process rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), when he withheld a videotape of Hansen's arrest. Hansen claims that because the videotape had substantial impeachment value, specifically with regard to Detective John Kempf, he has set forth a prima facie case under *Brady*. Hansen asserts that the videotape would have demonstrated that Detective Kempf's testimony that Hansen stated he was living on the bus was untrue, thereby impeaching his credibility. According to Hansen's

15

representations, the videotape establishes that Hansen told officers that he only slept in the bus one night, that he had just arrived the day before, and that if a meth lab was at the house it was not his.

This is not the argument that was presented to the post-conviction court, and the court did not rule on it. Rather, Hansen argued below that Detective John Ganske's credibility, not Kempf's, could have been called into question with respect to his testimony about whether Hansen requested a tow truck. Hansen contends his claim, as articulated on appeal, is preserved and directs this Court to his initial application and also to his response to the court's notice of its intent to dismiss his successive application. Nevertheless, the parties stipulated below that the district court would only be presented with four claims and that the parties would "present *all* of their arguments in writing." (Emphasis added.) The post-conviction court only ruled on the arguments presented. The court did not rule on any issue with respect to Kempf's credibility. "It is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error." *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008). We decline to address on appeal an argument that was never presented to the district court for consideration.[5]

## III.

## CONCLUSION

The post-conviction court correctly determined that Hansen failed to establish a *Napue* violation. Hansen's allegations of ineffective assistance of counsel were properly dismissed as Hansen failed to demonstrate deficient performance and/or prejudice under *Strickland*. Hansen's claim of prosecutorial misconduct is not properly before this Court as the district court never ruled on the issue now presented on appeal. Therefore, the court's order summarily dismissing Hansen's application for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**

---

[5] Because of our disposition on this claim we need not address the question presented by Hansen at oral argument with respect to whether this issue was preserved due to an insufficient record pursuant to *Esquivel v. State*, ___ Idaho ___, ___ P.3d ___ (Ct. App. Apr. 8, 2010).