195 P.3d 737

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Marcus Anthony MITCHELL, II, Defendant–Appellant.**

**No. 32857.**

Court of Appeals of Idaho.

Aug. 18, 2008.

Review Denied Oct. 27, 2008.

---

Nevin, Benjamin, McKay & Bartlett; Dennis A. Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

WALTERS, Judge Pro Tem.

Marcus Anthony Mitchell, II, appeals from his judgment of conviction and sentences for aggravated battery, robbery, and burglary. We affirm.

## I.

## BACKGROUND

In the early morning hours of July 11, 2005, two people forced themselves into an apartment belonging to a drug-dealer in Meridian, Idaho. During the ensuing scuffle, John "Jake" Hargis was shot five times, and one of the intruders, Matthew "Motu" Nuuvali, was shot once through the hand. The two intruders fled, taking $500 in cash from Hargis's dresser drawer. Hargis initially identified his shooter as "Lucky," who was "the only black person I've ever been acquainted with, friends with." Upon further reflection, however, Hargis realized that the shooter was actually taller and darker than his friend Lucky. DNA testing revealed that blood at the scene belonged to Nuuvali, who was arrested a few days after the shooting with a gunshot wound to the hand. Police also identified Marcus "Lucky" Mitchell as a potential suspect, although no one saw him in the apartment. A friend of Hargis who was present at the time of the shooting described a female as the second person who entered the apartment, wielding a gun. One of Hargis's friends identified Denise Quintana from a photo-lineup as that woman; Quintana was Mitchell's girlfriend. Police identified shell-casings in Hargis's apartment imprinted with GFL 9 mm Luger, which was a brand of ammunition Hargis did not own. Officers were not familiar with the GFL brand, and after some research discovered it was European-made and was sold locally in one store in Nampa. Two GFL 9mm Luger cartridges were later discovered in a suitcase in Mitchell and Quintana's apartment in Nampa.

Nuuvali, Mitchell, and Quintana were indicted on one count each of aggravated battery, I.C. §§ 18–903(c), 18–907(1)(b), 18–204, robbery, I.C. §§ 18–6501, 18–6502, 18–204, and burglary, I.C. § 18–1401. Additionally, Nuuvali was indicted for use of a firearm in the commission of a crime, I.C. § 19–2520. Nuuvali pleaded guilty to the charges of aggravated battery and use of a firearm, and the remaining two counts against him were dismissed. He testified at Mitchell's trial, detailing a plan devised by Nuuvali, Mitchell and Quintana to steal from Hargis because Mitchell knew Hargis had $5,000 in cash in his apartment. Nuuvali testified that Mitchell stayed in the car so as not to be recognized by Hargis while Nuuvali and Quintana entered the apartment to commit the robbery. Evidence was introduced at trial that Mitchell tried unsuccessfully to coerce Nuuvali into changing his story in order to get Mitchell out of trouble; Mitchell also scripted an exculpatory story for his cellmate to testify to regarding what Nuuvali purportedly told him about the morning of July 11.

Mitchell's niece, Y.M., testified that she was watching television in the front room of the house where she lived with her siblings, mother, and grandmother on the night of the shooting. Mitchell had moved out of that

house only a few weeks prior to the shooting. Sometime after dark, Y.M. heard a knock at the door, and her mother opened the door to admit Mitchell and Nuuvali. Mitchell was nervous and jumpy, while Nuuvali was quiet, but breathing heavily; he was cradling one arm against his chest as though injured. Nuuvali went directly into the bathroom, and when Y.M. later went into the bathroom, there was blood on the cabinet. Y.M. and her siblings were ordered to go downstairs while the adults remained upstairs. The next morning, while Y.M. was having breakfast, her grandmother came in from the back yard holding two guns, which were immediately placed in a box and then removed from the house.

Mitchell was found guilty by a jury on all three counts. He was sentenced to twenty-five years for the robbery with eight years determinate; fifteen years for the aggravated battery with eight years determinate; and ten years for burglary with eight years determinate; all sentences to run concurrently. Mitchell filed a Rule 35 motion for a reduction in his sentence, which the district court denied. Mitchell now appeals as to the sufficiency of the evidence to corroborate the accomplice testimony and to uphold his conviction for aggravated battery, and from the denial of his Rule 35 motion for reduction of sentence.

## II.

## DISCUSSION

### A. Sufficiency of the Evidence

 Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Horejs*, 143 Idaho 260, 263, 141 P.3d 1129, 1132 (Ct.App. 2006); *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Reyes*, 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct.App.1992). We will not substitute our view for that of the jury as to the credi-

bility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991); *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

### 1. Sufficiency of the evidence to corroborate accomplice testimony

Mitchell asserts that there was insufficient evidence to corroborate the testimony from Nuuvali, his alleged accomplice, and therefore Nuuvali's testimony should not have been considered by the jury. Idaho Code prohibits a conviction on the basis of accomplice testimony unless such testimony is "corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." I.C. § 19–2117. If the corroboration only shows "the commission of the offense, or the circumstances thereof," it is not sufficient for a conviction. *Id.* Corroborating evidence is required to protect against the danger that an accomplice may wholly fabricate testimony, incriminating an innocent defendant in order to win more favorable treatment for the accomplice. *Matthews v. State*, 136 Idaho 46, 49, 28 P.3d 387, 390 (Ct.App.2001); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct.App.1998).

 Corroborating evidence does not need to be sufficient to sustain a conviction on its own, nor must it corroborate every detail of the accomplice's testimony. *State v. Aragon*, 107 Idaho 358, 364, 690 P.2d 293, 299 (1984); *State v. Hill*, 140 Idaho 625, 630, 97 P.3d 1014, 1019 (Ct.App.2004); *Matthews*, 136 Idaho at 50, 28 P.3d at 391; *State v. Campbell*, 114 Idaho 367, 370, 757 P.2d 230, 233 (Ct.App.1988). Corroborating evidence may be slight, need only go to one material fact, and may be entirely circumstantial. *State v. Jones*, 125 Idaho 477, 486, 873 P.2d 122, 131 (1994); *Hill*, 140 Idaho at 630, 97 P.3d at 1019. Statements attributed to the

defendant himself may serve as the necessary corroboration. *Matthews,* 136 Idaho at 50, 28 P.3d at 391; *Campbell,* 114 Idaho at 370, 757 P.2d at 233.

■ There was sufficient evidence presented by witnesses other than Nuuvali that tends to connect Mitchell with the forced entry, robbery, and shooting of Hargis. First, shell-casings were recovered at the scene which were manufactured by GFL, a relatively unknown brand in Meridian at the time of the shooting. GFL cartridges were subsequently located at Mitchell and Quintana's apartment in Nampa, and the only local retailer of that brand was also discovered in Nampa. Second, Hargis testified that Mitchell knew about the money he was saving for a vacation; Hargis had never met Nuuvali prior to the shooting and Nuuvali had no basis to know that Hargis would have a significant amount of cash in his apartment. Finally, Mitchell's niece testified about the late-night appearance of Mitchell and his friend Nuuvali at her house, and the fact that Nuuvali was injured; she was sure that Mitchell had not been at the house during the evening prior to arriving with Nuuvali. She testified that there was blood in the bathroom after Nuuvali left, and that her grandmother discovered two guns in the back yard later that morning. Despite some confusion as to what time Mitchell and Nuuvali reached the house, this evidence, although circumstantial, tends to connect Mitchell to the crimes. Therefore there was sufficient corroboration of Nuuvali's testimony to support Mitchell's conviction.

## 2. Sufficiency of the evidence to support the conviction for aggravated battery

Mitchell contends that there was insufficient evidence for a jury to convict him of aggravated battery. He claims Nuuvali's admission that shooting Hargis was never part of the plan eliminates any possibility that Mitchell intended for a battery to occur. Therefore, he contends, the state did not prove the mental element that is necessary to convict him for aiding, abetting, encouraging, or soliciting that battery.

Battery occurs when a person "unlawfully and intentionally cause[s] bodily harm to an individual." I.C. § 18–903(c). A person commits aggravated battery when, in the commission of a battery, he "uses a deadly weapon or instrument." I.C. § 18–907(1)(b). Because Mitchell did not shoot Hargis himself, his conviction for aggravated battery arises under I.C. § 18–204, which states in relevant part that "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." However, there is also a requirement that "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent." I.C. § 18–114. "Intent or intention is manifested by the commission of the acts and surrounding circumstances connected with the offense." I.C. § 18–115.

■ In order to be convicted under I.C. § 18–204 for aiding and abetting the commission of a crime, a person must act in such a way as to facilitate, promote, encourage, solicit, or incite the actions of the crime. *Aragon,* 107 Idaho at 364, 690 P.2d at 299; *State v. Holder,* 100 Idaho 129, 132, 594 P.2d 639, 642 (1979), *overruled on other grounds by State v. Humpherys,* 134 Idaho 657, 8 P.3d 652 (2000); *Howard v. Felton,* 85 Idaho 286, 297, 379 P.2d 414, 421 (1963); *Horejs,* 143 Idaho at 263, 141 P.3d at 1132. However, mere knowledge of a crime or assent or acquiescence in its commission does not create accomplice liability through aiding and abetting. *State v. Randles,* 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990), *overruled on other grounds by Humpherys,* 134 Idaho 657, 8 P.3d 652. Aiding and abetting contemplates a sharing by the aider and abettor of the criminal intent of the perpetrator. *Howard,* 85 Idaho at 297, 379 P.2d at 421; *State v. Hickman,* 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct.App.1991). Thus, the aider and abettor must have the requisite intent and have acted in some manner to bring about the intended result. *State v. Gonzalez,* 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct.App. 2000).

Intent is one of the material elements of the crime of aggravated battery, *see* I.C. § 18–903(c), and it must be proven beyond a reasonable doubt by the prosecution. *State v. Gums*, 126 Idaho 930, 933, 894 P.2d 163, 166 (Ct.App.1995). However, direct evidence of intent is not required. It may be shown by circumstantial evidence, or proven by the defendant's acts and conduct. *State v. Reyes*, 139 Idaho 502, 506, 80 P.3d 1103, 1107 (Ct.App.2003); *Gums*, 126 Idaho at 933, 894 P.2d at 166. Aggravated battery is a general intent crime, *State v. Carlson*, 134 Idaho 389, 400, 3 P.3d 67, 78 (Ct.App.2000), and such intent is proven "if it is shown that the defendant knowingly performed the proscribed acts," *State v. Young*, 138 Idaho 370, 377, 64 P.3d 296, 303 (2002). Moreover, on appeal, unless it can be said that the facts proven afford no reasonable ground for the inference drawn by the fact-finder from the outward acts and conduct of the accused, as well as from the surrounding circumstances, we would not be justified in disturbing the verdict on the ground of the insufficiency of the evidence to show a felonious intent. *State v. Andreason*, 44 Idaho 396, 257 P. 370 (1927); *State v. Bronson*, 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct.App.1987).

The evidence presented at trial was sufficient to support the jury's inference that Mitchell knowingly aided and abetted the use of a deadly weapon to unlawfully and intentionally cause bodily harm to Hargis. The evidence showed that Mitchell provided at least one loaded gun for Nuuvali and Quintana to take into Hargis's apartment in order to facilitate the robbery. The evidence of the scarcity of GFL ammunition available for purchase in the area and the fact that two GFL brand bullets were located at Mitchell's apartment allowed the jury to infer that the gun used to shoot Hargis was provided, already loaded, by Mitchell. Mitchell believed that Hargis was unarmed, and informed both Nuuvali and Quintana of this. Nevertheless, he sent them to rob a known drug-dealer with at least one loaded gun. That loaded gun was in the hands of Nuuvali, who was in charge of actually obtaining the money, while Quintana kept everyone else in the apartment from interfering. The record indicates that Quintana was also armed with a gun.

All of this evidence together provided a sufficient basis from which the jury could infer that Mitchell knowingly supplied a loaded gun with the intent that it be used against anyone in the apartment who tried to prevent the robbery.

## B. Rule 35 Denial

Mitchell's Rule 35 motion was filed on the basis of new information—a letter written by Nuuvali to the district court which claimed that Mitchell's involvement in the crimes was somewhat less than Nuuvali's trial testimony indicated. Mitchell asked for leniency for a shorter determinate portion of his sentences so that he would be able to enroll in prison programming sooner and therefore be better equipped to support his family when he is released from prison. The district court denied the motion. Mitchell's appeal contends the court abused its discretion for failing to reduce his determinate sentence after receiving notice that the original sentence was based on material misinformation in Nuuvali's trial testimony.

If a sentence is within the statutory limits, a motion for reduction of sentence under Rule 35 is a plea for leniency, and we review the denial of the motion for an abuse of discretion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007); *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct.App.1989). When presenting a Rule 35 motion, the defendant must show that the original sentence was unduly severe, or that it is excessive in light of new or additional information subsequently provided to the district court in support of the Rule 35 motion. *Knighton*, 143 Idaho at 320, 144 P.3d at 25; *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003); *State v. Strand*, 137 Idaho 457, 463, 50 P.3d 472, 478 (2002); *see also State v. Wright*, 134 Idaho 73, 79, 996 P.2d 292, 298 (2000); *State v. Hernandez*, 121 Idaho 114, 117 822 P.2d 1011, 1014 (Ct.App.1991). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497,

500, 861 P.2d 67, 70 (1993); *State v. Kerchusky*, 138 Idaho 671, 679, 67 P.3d 1283, 1291 (Ct.App.2003). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726–27, 170 P.3d 387, 391–92 (2007).

 Where reasonable minds might differ as to the length of the sentence, this Court will not substitute its view for that of the district court. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *Kerchusky*, 138 Idaho at 679, 67 P.3d at 1291; *State v. Admyers*, 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992). In reviewing the denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *Kerchusky*, 138 Idaho at 679, 67 P.3d at 1291; *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). The primary objectives of a sentence of confinement are to protect society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

 Nuuvali's letter informed the court that Mitchell did not provide both of the guns used on July 11 because one of the guns belonged to Nuuvali, and that Nuuvali had seen Hargis's apartment prior to the shooting, albeit only a few hours prior to the shooting. Mitchell claims that the fact that he did not supply both guns means that the district court improperly relied on material misinformation when determining his original sentences. Sentencing is considered a critical stage in the trial process, and the "constitutional guarantee of due process is fully applicable at sentencing." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393, 402 (1977); *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir.1995). Reliance on materially false information at sentencing violates due process and is an abuse of discretion. *Hanna*, 49 F.3d at 577; *State v. Martin*, 142 Idaho 58, 60, 122 P.3d 317, 319 (Ct.App.2005). However, where the false information does not form the basis for the sentence, there is no need to vacate the sentence on appeal. *United States v. Ruster*, 712 F.2d 409, 412 (9th Cir.1983).

 Even assuming, *arguendo*, that Nuuvali's letter demonstrated the truth as to ownership of one of the guns, the court's belief that Mitchell provided both of the loaded guns did not alone form the basis for his sentence. Mitchell developed the plan to acquire easy cash, named the target, and sent his pregnant girlfriend to the door because it was more likely she would be admitted at that late hour. Nuuvali's ownership of one of the guns does not eliminate the fact that Mitchell was involved in every aspect of the crime and provided at least one of the guns—the one that was used to shoot Hargis. If the allegedly false information about one gun was removed from the court's analysis, the denial of Mitchell's motion for a reduced sentence would still not be an abuse of discretion. Mitchell has a lengthy criminal record of violent crimes, he was the instigator in this criminal activity, he exerted influence over Nuuvali and Quintana, and he has taken no responsibility for the results of his actions. The district court's order denying the motion for reduction of sentence was within the boundaries of the court's discretion and followed the applicable legal principles.

## III.

### CONCLUSION

Sufficient evidence was presented at trial to corroborate Nuuvali's accomplice testimony, and for a jury to find Mitchell possessed the requisite intent to support a conviction for aggravated battery. The district court did not abuse its discretion by denying Mitchell's Rule 35 motion for reduction of

sentence. Mitchell's judgment of conviction and sentences are affirmed.

Chief Judge GUTIERREZ and Judge LANSING concur.