**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51895**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Opinion Filed: June 11, 2026** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| ROBERT JACK LAPLANTE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Mark T. Monson, District Judge.

Judgment of conviction for first degree attempted murder, enhanced by being a persistent violator, affirmed; order denying motion to suppress, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Robert Jack LaPlante appeals from his judgment of conviction for first degree attempted murder, as enhanced by being a persistent violator, and the district court's order denying his motion to suppress. For the reasons stated below, we affirm LaPlante's judgment of conviction and the district court's order denying his motion to suppress.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 14, 2023, officers responded to a report of a battery at a transfer station located in Lewiston, Idaho after a woman found her neighbor unconscious. When officers arrived, they found a man, identified by witnesses as L.O.D., lying on a piece of carpet near a cluster of trailers. L.O.D. was unconscious and his face and body were covered in dried blood. L.O.D. had several deep lacerations on his arms, a stab wound through his face, and trauma to his head. L.O.D.'s breathing appeared shallow, and emergency medical technicians (EMTs) were unable to find an observable radial pulse. L.O.D. was transported to a hospital and treated for his significant and

1

severe injuries. As officers began to inspect the area where L.O.D. was found, one of the officers moved the carpet and discovered a high-lift car jack with blood on it; officers believed the car jack was used to inflict some of L.O.D.'s injuries. Based on the amount of dried blood, officers estimated L.O.D. had likely been attacked earlier that morning, several hours before he was found.

Officers collected surveillance video from the transfer station and the surrounding area. Surveillance video from approximately 9:20 a.m. on July 14 showed a white Chevrolet Impala, driven by a man wearing a fedora-style hat, arrive at the transfer station. The video also captured the same white Impala leave the area at 9:33 a.m., following a red and black pickup truck that was identified by witnesses as L.O.D.'s missing vehicle.

The following day, a Lewiston Police Department officer, Sergeant Reese, observed what appeared to be the same white Impala from the surveillance video drive across a bridge from Lewiston into Clarkston, Washington. Sgt. Reese radioed and requested to meet with an officer from the Clarkston Police Department so he could "share information about a vehicle he was looking for." Sgt. Reese then communicated that he believed he was behind the suspect vehicle, and it was crossing a bridge into Clarkston. Sgt. Odenborg, a Clarkston Police Department officer, was on duty and close to the location, so he headed in the direction described by Sgt. Reese. Shortly thereafter, the Impala turned into a parking lot and parked, followed by Sgt. Odenborg and Sgt. Reese. Sgt. Odenborg turned his emergency lights on and approached the Impala. LaPlante exited the Impala, and Sgt. Odenborg informed LaPlante that he was being detained but was not under arrest. Sgt. Odenborg then asked LaPlante if he would be willing to accompany the officer to the Clarkston Police Department to speak with Sgt. Reese and other Lewiston Police Department detectives. LaPlante agreed. While LaPlante was detained in the parking lot, another Lewiston Police Department officer noted that LaPlante was wearing the same fedora-style hat seen in the surveillance video; the hat was eventually seized. LaPlante's Impala was impounded and later searched pursuant to a search warrant.

During transport to the police station, LaPlante made unsolicited comments to Sgt. Odenborg about being in possession of several pocketknives. After arriving at the police station, LaPlante again agreed to speak with detectives and was placed in an interview room and given his *Miranda*[1] warnings. LaPlante told detectives that on the morning of July 14, LaPlante picked up an unhoused man named "Bill" in Clarkston, he and "Bill" went to a bar and a gas

---

[1] *Miranda v. Arizona*, 348 U.S. 436 (1966).

station, and then LaPlante gave "Bill" a ride to a property in North Lewiston so "Bill" could borrow a pickup. Officers were able to verify with the owner of the bar that on the day L.O.D. was attacked, LaPlante had come into the bar between 7:30 a.m. and 8:00 a.m.

Surveillance video from the gas station showed LaPlante and a male passenger arrive at the gas station in LaPlante's Impala at 8:35 a.m. and then leave at 8:55 a.m. LaPlante was wearing the same fedora-style hat, and the other man was wearing a baseball cap. Surveillance video from a business near the transfer station showed the two men drive toward the transfer station, park in the area where L.O.D. lived, and then exit the Impala at approximately 9:21 a.m. At 9:32 a.m., surveillance video captured L.O.D.'s pickup leave the transfer station; the driver, who was the sole occupant, was wearing a baseball cap. The video also captured the Impala, driven by LaPlante but without a front-seat passenger, leave approximately one minute later. Shortly thereafter, LaPlante went to a used car dealership where he inquired about a vehicle and then informed a salesperson that he had just been in a fight in Seattle, Washington.

When confronted by officers with still images from the transfer station surveillance video, LaPlante identified himself as the driver of the Impala, identified "Bill" as the driver of the red and black pickup, and confirmed the pickup belonged to L.O.D. LaPlante said that "as far as he knew," L.O.D. had been living on the property from which "Bill" borrowed the pickup. LaPlante also told detectives that his family hated L.O.D.

Officers collected DNA samples from LaPlante and photographed the injuries on his body which included a large bruise on the back of his upper arm, a deep bruise on his stomach, and several scratches and cuts on his arms, legs, and neck. Officers then transported LaPlante to his home where he agreed to retrieve the clothing he had been wearing on the day of the attack. When the officers and LaPlante arrived, there was a man in LaPlante's bedroom who verbally identified himself as Tim Allen. The officers observed that Allen had superficial scratches and cuts on his body and dried blood on the inside of his right elbow. The officers later verified that Allen was the man LaPlante referred to as "Bill" when LaPlante told the officers who he was with on the day of the attack.

LaPlante was indicted for first degree attempted murder, Idaho Code §§ 18-4001, -4002, -4003(a) and -306. The State also alleged that LaPlante is a persistent violator, I.C. § 19-2514. Prior to trial, LaPlante filed a motion to suppress all evidence obtained on July 14 and July 15 and all LaPlante's in-custody, pre-*Miranda* statements, arguing that he was subjected to

an unlawful search and seizure. The State opposed the motion. Following a hearing and supplemental briefing, the district court denied LaPlante's motion.

The State then provided notice that one of its potential witnesses would be Allen, LaPlante's accomplice. The State filed a motion to exclude Allen's prior felony conviction under Idaho Rule of Evidence 609. Following a hearing, the motion was granted.

The matter proceeded to a jury trial. In exchange for a lesser, amended charge, Allen testified against LaPlante.[2] After the State rested, LaPlante moved for an Idaho Criminal Rule 29(a) motion for judgment of acquittal arguing that there was insufficient evidence to corroborate Allen's testimony as required by I.C. § 19-2117. The motion was denied. The jury found LaPlante guilty as charged, and the judgment of conviction was entered. Thereafter, LaPlante filed a renewed motion for judgment of acquittal, which was also denied. LaPlante appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the trial court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the trial court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985).

---

[2]    Allen was also charged with attempted murder; however, in exchange for his truthful testimony, the State amended the charge to aggravated battery.

Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

### III.

### ANALYSIS

LaPlante raises four arguments on appeal: (1) the district court erred in denying LaPlante's motion to suppress because the Washington officer, Sgt. Odenborg, lacked reasonable suspicion to stop LaPlante despite the collective knowledge doctrine; (2) the district court erred in denying LaPlante's motion for judgment of acquittal because the State presented insufficient evidence to corroborate the testimony of LaPlante's accomplice, Allen, such that a jury could find LaPlante guilty of attempted murder; (3) the district court committed fundamental error by omitting the definition of "corroboration" from the jury instructions for accomplice corroboration; and (4) the district court abused its discretion by excluding Allen's prior robbery conviction because Allen had not been released from confinement for that conviction more than ten years prior to LaPlante's trial. The district court analyzed the decision based only on the age of the conviction and not when Allen was released from confinement, which resulted in the district court's reliance on an incorrect subsection of I.R.E. 609. The State responds that LaPlante has failed to show any error on all four issues. Specifically, regarding Allen's prior robbery conviction, the State asserts LaPlante's argument is both unpreserved and barred by the doctrine of invited error because LaPlante

5

stipulated below that Allen's conviction was more than ten years old. Each argument will be addressed in turn.

## A.    Motion to Suppress

LaPlante argues the district court erred in denying his motion to suppress all evidence obtained as a result of his seizure. LaPlante asserts that his seizure was unlawful under the collective knowledge doctrine because Sgt. Odenborg did not possess reasonable suspicion to stop LaPlante. The State argues the district court properly concluded that the collective knowledge of the officers involved justified the seizure of LaPlante. Specifically, the State highlights the fact that although the Idaho officer, Sgt. Reese, was not the officer who initiated the traffic stop, he was both involved in and on the scene for LaPlante's seizure. The district court found that Sgt. Odenborg "was aware from his conversation with [Sgt.] Reese that [the Impala] was connected to an ongoing investigation in Lewiston."

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment to the United State Constitution's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws or that either the vehicle or the occupant is subject to detention in connection with a violation of other laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop and the whole picture must yield a particularized and objective basis for suspecting that the individual being stopped is or has been engaged in wrongdoing. *State v. Sevy*, 129 Idaho 613, 615, 930 P.2d 1358, 1360 (Ct.App.1997). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

The collective knowledge doctrine allows an officer to gather information from various sources--bulletins, dispatch, fellow officers, and so forth--to support a finding of reasonable

suspicion. In *United States v. Hensley*, 469 U.S. 221, 231 (1985), the United States Supreme Court held:

> [W]hen evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who *issued* the flyer possessed probable cause to make the arrest. *It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance.* In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

(Emphasis added.) In *United States v. Ramirez*, 473 F.3d 1026, 1033 (9th Cir. 2007), the Ninth Circuit addressed the same factual circumstances that exist in LaPlante's case. There, the Ninth Circuit held that a situation in which the collective knowledge doctrine applies is "where an officer (or team of officers), with direct personal knowledge of all the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that *another officer, not previously involved in the investigation, conduct a stop,* search, or arrest." *Id.* (Emphasis added.) The Idaho Court of Appeals has held similarly. In *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct. App. 2004), we held that under the collective knowledge doctrine, an officer is not required to be privy to the underlying information which constituted the grounds for reasonable suspicion. *Hensley*, 469 U.S. at 232-33.

LaPlante does not argue that Sgt. Reese lacked reasonable suspicion to stop LaPlante; instead, he argues that Sgt. Odenborg did not possess sufficient reasonable suspicion because Sgt. Odenborg testified that he did not receive any information from Sgt. Reese other than a request to stop the white Impala. LaPlante is correct that Sgt. Odenborg knew the Lewiston Police Department wanted LaPlante detained but was not certain why. But that fact is not dispositive of the issue. The admissibility of evidence derived from the stop turns not upon whether the officer who acted in reliance upon a report or bulletin possessed reasonable suspicion, but on whether the officer who issued the report or bulletin had knowledge of articulable facts supporting a reasonable suspicion that the person to be stopped is or has been involved in criminal activity. *Van Dorne*, 139 Idaho at 964, 88 P.3d at 783.

Sgt. Reese knew that LaPlante's vehicle was potentially involved in an attempted murder and that LaPlante was a suspect. Because Sgt. Reese had reasonable suspicion to stop LaPlante, which LaPlante concedes, then Sgt. Odenborg also had reasonable suspicion to stop the vehicle

based on the collective knowledge doctrine. LaPlante argues that the district court's reliance on *Hensley* in denying his motion to suppress was misplaced because "Odenborg did not stop the car in reliance on information he received in a flyer, he only stopped the Impala because Officer Reese asked him to do so." We see no legal difference between a written flyer or bulletin that tells officers to look out for a suspect but provides no further information and a verbal instruction that says the same. As the Supreme Court stated in *Hensley*, it is not necessary that those relying on the flyer be aware of the specific facts that led their colleagues to seek their assistance. Thus, there was no constitutional requirement that Sgt. Odenborg be aware of the specific facts that explained why Sgt. Reese wanted the Impala to be stopped.

We also see no legal distinction between a Washington officer stopping LaPlante's vehicle based on an Idaho investigation and an officer from a different city or county within Idaho stopping LaPlante's vehicle based on a Lewiston investigation. LaPlante has offered no case law to support any assertion that the collective knowledge doctrine ceases at the state border. Because the collective knowledge doctrine applies where federal law enforcement agencies are working with state law enforcement,[3] we see no reason why it does not apply to law enforcement agents working together from different states. Because Sgt. Reese had reasonable suspicion to stop LaPlante, Sgt. Odenborg also possessed reasonable suspicion to detain LaPlante under the collective knowledge doctrine. Therefore, the district court did not err in denying LaPlante's motion to suppress.

**B.      Motion for Judgment of Acquittal**

Next, LaPlante argues the district court erred in denying his I.C.R. 29 motion for judgment of acquittal because the State failed to present independent evidence to corroborate Allen's testimony that LaPlante "inflicted any injuries upon [L.O.D.], or struck him with the high lift jack." The State argues it presented sufficient evidence corroborating numerous aspects of Allen's testimony.

A defendant may not be convicted on the testimony of an accomplice unless the testimony is "corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." I.C. § 19-2117.

---

[3]      *United States v. Sutton*, 794 F.2d 1415 (9th Cir. 1986) (holding that collective knowledge doctrine applied where United States Customs officials contacted local state police to perform an investigatory stop); *United States v. Ibarra-Sanchez*, 199 F.3d 753 (5th Cir. 1999) (same but Drug Enforcement Administration (DEA) agents and local police); *United States v. Burton*, 288 F.3d 91 (3d Cir. 2002) (same; DEA agents and local police).

The corroboration requirement is intended to prevent an accomplice from incriminating an innocent defendant through wholly fabricated testimony. *Matthews v. State*, 136 Idaho 46, 49, 28 P.3d 387, 390 (Ct. App. 2001). Corroborating evidence need not be sufficient to sustain a conviction on its own, nor must it corroborate every detail of the accomplice's testimony. *State v. Mitchell*, 146 Idaho 378, 382-83, 195 P.3d 737, 741-42 (Ct. App. 2008). The corroborating evidence may be slight, may go to only one material fact, and may be entirely circumstantial. *State v. Stone*, 147 Idaho 890, 891-92, 216 P.3d 648, 649-50 (Ct. App. 2009). Statements attributable to the defendant may also serve as the necessary corroboration. *Mitchell*, 146 Idaho at 382, 195 P.3d at 741. Furthermore, the corroborating evidence is sufficient if it tends to connect the defendant to the crime, independent of the testimony of the accomplice. *Stone*, 147 Idaho at 892, 216 P.3d at 650.

Allen testified about the events leading to the attack on L.O.D. Allen explained that on the morning of the attack, he and LaPlante went to a bar, a gas station, and then to L.O.D.'s residence in LaPlante's white Impala. This was corroborated by both the bar owner's testimony and surveillance video. The bar owner testified that LaPlante came into the bar the morning of the attack, inquired about a knife, and then left in his Impala with another person. The bar owner also testified that LaPlante was acting "[k]ind of anxious, like a person that had things to do, places to go." Surveillance video from outside L.O.D.'s residence showed the white Impala arrive, and LaPlante identified himself as the driver of the Impala shown in the video. The State also admitted a gas station receipt from the transaction made by LaPlante and Allen, and surveillance video of LaPlante and Allen at the gas station. Seventeen hours after the attack, officers located LaPlante driving the same white Impala shown in the videos and described by witnesses. LaPlante was also wearing the same hat seen in the surveillance videos.

Next, Allen testified that after the attack, he and LaPlante left separately; Allen in L.O.D.'s pickup and LaPlante in the Impala. Again, this was corroborated by surveillance video that showed LaPlante and Allen arrive at the transfer station together in the Impala and then leave separately--LaPlante in the Impala and Allen in L.O.D.'s pickup. Allen also testified that he parked the pickup near his friend's residence. This was corroborated by a detective who testified that officers found L.O.D.'s pickup at the location Allen described. Allen also testified that following the disposal of the pickup, he called LaPlante from two of his friends' cell phones because he left his cell phone in LaPlante's Impala. This was corroborated by the two friends, who testified that Allen used their phones, and by cell phone records.

9

Regarding the physical evidence, Allen testified that LaPlante and L.O.D. had been fighting each other with knives. Officers and medical staff testified that L.O.D. suffered multiple stab wounds. Additionally, when LaPlante was contacted by officers the day after the attack, the officers noted that LaPlante had fresh cuts on his body. Allen also testified that LaPlante hit L.O.D. over the head with a car jack. An officer testified that he located the jack at the crime scene, and the blood and hair on it matched the DNA profile of L.O.D.

Allen described how he and LaPlante threw their knives into a ditch near L.O.D.'s property after the attack. Detectives were able to recover Allen's knife from that ditch. Allen testified that after the attack, he and LaPlante wrapped L.O.D.'s body in carpet to conceal him. A detective testified that L.O.D. was found on a piece of carpet and efforts had been clearly made to conceal blood at the scene. Thus, again, Allen's testimony is corroborated by physical evidence.

Next, Allen testified about the steps he and LaPlante took to avoid detection from law enforcement. Specifically, Allen testified that LaPlante wore thick gloves during the attack to avoid leaving fingerprints. In LaPlante's Impala, officers found a pair of work gloves. Allen also testified that he wore a wig and hat to conceal his identity, which was corroborated by the surveillance video from the gas station.

Finally, LaPlante himself corroborated Allen's testimony. Shortly after the attack, LaPlante went to a used car dealership and stated that he had just been in a fight in Seattle. LaPlante expressed interest in buying a vehicle but then never returned to the dealership. The State argued that this unusual behavior was LaPlante attempting to establish an alibi. When LaPlante was confronted by detectives with the surveillance video of him and Allen outside L.O.D.'s residence, LaPlante acknowledged that he was there with "Bill" (Allen) but claimed he was unsure whether L.O.D. still lived there. A detective testified that a forensic examination of LaPlante's cell phone showed "a notable period of inactivity . . . meaning no activity" during the key period surrounding the attack, specifically from approximately 7:30 a.m. to 1:00 p.m. Additionally, when first interviewed by detectives about his activity on the morning of the attack, LaPlante claimed to be with an unhoused man named "Bill," who he "really didn't know" and "didn't particularly care for."

The motive for the attack offered by the State at trial was that LaPlante was upset with L.O.D. because L.O.D. owed LaPlante's brother, Rodney, money for the pickup and a motorcycle Rodney sold L.O.D. At trial, Rodney testified it was true that L.O.D. owed him money and LaPlante was upset about it. Additionally, the owner of the bar LaPlante went to the morning of

10

the attack testified that he had previously overheard LaPlante talking about L.O.D. owing money to Rodney and that L.O.D. had Rodney's pickup.

Although LaPlante argues none of the above evidence corroborates Allen's testimony that LaPlante inflicted most of the injuries to L.O.D. and that LaPlante hit L.O.D. with the high-lift car jack, it does not need to. As explained above, corroborating evidence need not be sufficient to sustain a conviction on its own, nor must it corroborate every detail of the accomplice's testimony. *Mitchell*, 146 Idaho at 382, 195 at 741. Assuming the jury believed LaPlante had been in a fight in Seattle and that was the cause of his injuries, even a highly plausible, innocent explanation of the evidence does not strip the evidence of its corroborative character. *Stone*, 147 Idaho at 893, 216 P.3d at 651.

The evidence in this case, although largely circumstantial, connects LaPlante to the attempted murder, independent of Allen's testimony. This evidence includes: (1) the surveillance video from various sources placing LaPlante at the scene of the crime in the relevant time period; (2) the testimony of other witnesses, including testimony providing motive for the attack and that LaPlante stated he had recently been in a fight; (3) the physical evidence, including the location and condition of L.O.D. (wrapped in the carpet); and (4) LaPlante's physical appearance after the attack. This evidence, along with the rational inferences therefrom, connects LaPlante to the offense even without Allen's testimony.

Allen's testimony was sufficiently corroborated as required by I.C. § 19-2117. Therefore, the district court did not err in denying LaPlante's I.C.R. 29 motion for judgment of acquittal.

## C.     Accomplice Corroboration Jury Instruction

LaPlante next argues that the district court committed fundamental error by failing to properly instruct the jury on the meaning of "corroboration." In response, the State argues there was no fundamental error.

Ordinarily, a party may not claim that a jury instruction was erroneous unless the party objected to the instruction prior to the jury beginning to deliberate. I.C.R. 30(b). However, even absent a timely objection to the trial court, claims of instructional error are reviewable for the first time on appeal under the fundamental error doctrine. *State v. Anderson*, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial

11

counsel made a tactical decision in failing to object. Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prong of the test actually affected the outcome of the trial. *Id.* Jury instructions that fail to require the State to prove every element of the offense violate due process and, thus, rise to the level of fundamental error. *Middleton v. McNeil*, 541 U.S. 433, 437, (2004); *Anderson*, 144 Idaho at 749, 170 P.3d at 892.

Jury instructions are reviewed de novo to determine whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law. *State v. Regan*, 175 Idaho 237, 241, 564 P.3d 706, 710 (2025). An erroneous jury instruction violates due process if it relieves the State of the burden of proving every element of the crime beyond a reasonable doubt. *State v. Bodenbach*, 165 Idaho 577, 587, 448 P.3d 1005, 1015 (2019). An erroneous instruction will not constitute reversible error unless the instructions as a whole misled the jury or prejudiced a party. *State v. Campbell*, 168 Idaho 164, 169, 481 P.3d 118, 123 (2021). If there is an omission of an essential element in a jury instruction this Court employs the harmless error test. *State v. Hickman*, 146 Idaho 178, 180, 191 P.3d 1098, 1100 (2008).

The district court gave jury instruction number 24, which mirrors Idaho Criminal Jury Instruction 313. The instruction given at trial stated, in full:

> A person may not be found guilty based solely on the testimony of an accomplice.
>
> 1. Timothy Allen is an accomplice.
>
> There must be evidence, other than testimony of an accomplice, that tends to connect the defendant with the commission of the crime. Such other evidence may be slight and need not be sufficient in and of itself to establish the defendant's guilt. It is not sufficient, however, if it merely shows that the crime was committed, and it must not come from the testimony of another accomplice.
>
> Statements of the defendant other than as testified to by the accomplice are capable of providing corroboration.

At trial, LaPlante did not object to the jury instruction or request any additional instructions. However, on appeal, LaPlante argues that the district court committed fundamental error by not giving the jury ICJI 314. Idaho Criminal Jury Instruction 314 reads, in full:

> Corroborative evidence is evidence of some act or fact related to the offense which, if believed, by itself and without any aid, interpretation, or direction from the testimony of the accomplice tends to connect the defendant with the commission of the offense charged.

However, it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged, or that it corroborate every fact to which the accomplice testifies.

In determining whether an accomplice has been corroborated, you must first assume the testimony of the accomplice has been removed from the case. You must then determine whether there is any remaining evidence which tends to connect the defendant with the commission of the offense.

If there is not such independent evidence which tends to connect defendant with the commission of the offense, the testimony of the accomplice is not corroborated.

If there is such independent evidence which you believe, then the testimony of the accomplice is corroborated.

LaPlante argues that instruction number 24 omitted the statutory requirement under I.C. § 19-2117 that the corroborating evidence "in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." However, instruction number 24 explicitly states that "a person may not be found guilty based solely on the testimony of an accomplice" and "[t]here must be evidence, other than testimony of an accomplice, that tends to connect the defendant with the commission of the crime." The phrase from instruction number 24 that "[t]here must be evidence, other than the testimony of an accomplice" instructed the jury that there must be evidence "in itself, and without the aid of the testimony of the accomplice" that tended to connect LaPlante to the commission of the offense. Instruction number 24 adequately covered the language from I.C. § 19-2117 and correctly set forth the State's burden to corroborate Allen's testimony. The district court did not err in not providing the additional instruction from ICJI 314.

Because we find no error committed by the district court in its jury instructions, we need not address the remaining two prongs of fundamental error.

**D.      Allen's Prior Felony Conviction**

Finally, LaPlante argues the district court erred in its ruling to exclude evidence of Allen's former robbery conviction pursuant to I.R.E 609(b) instead of 609(a) because Allen had not been released from confinement for that conviction more than ten years prior to LaPlante's trial. The State responds that LaPlante's argument is both unpreserved and barred by the doctrine of invited error.

Under I.R.E. 609, the trial court must apply a two-prong test to determine whether evidence of a witness's prior felony conviction should be admitted: (1) the court must determine whether the fact or nature of the conviction is relevant to the credibility of the witness; and (2) if so, the

13

court must determine whether the probative value of the evidence outweighs its prejudicial effect. *State v. Grist*, 152 Idaho 786, 789, 275 P.3d 12, 15 (Ct. App. 2012). When reviewing the district court's determination as to the first prong, this Court "exercises free review because relevancy is an issue of law." *Id.* When reviewing the district court's determination as to the second prong, this Court applies an abuse of discretion standard. *Id.* We must defer to the discretion of the district court so long as that discretion was not abused. *Id.* at 790, 275 P.3d at 16.

Idaho courts have divided felonies into three categories having varying degrees of probative value on the issue of credibility. *Id.* at 789, 275 P.3d at 15. Crimes in the first category, such as perjury, are intimately connected to a person's veracity and credibility, while crimes in the second category, like robbery and burglary, are somewhat less relevant to credibility because they do not deal directly with veracity and have only a general relationship with honesty. *Id.* Offenses in the third category, which include crimes of passion and acts of violence that are the product of emotional impulse, have been said to have little or no direct bearing on honesty and veracity. *Id.* Further, the determination whether evidence of a particular felony conviction is relevant to credibility depends on the particular facts and circumstances of each case and must therefore be decided on a case-by-case basis. *Id.* The case-by-case analysis requires examination of the statute under which the conviction occurred to determine into which category the conviction falls. *Id.* For example, while theft crimes generally do not involve dishonest or false statements, such crimes may be committed by fraudulent or deceitful means and fall into the first category. *Id.*

LaPlante concedes that the district court properly classified Allen's prior robbery conviction as a crime in the second category, meaning it had "some relevance to the issue of credibility." However, LaPlante argues that the district court erred in analyzing the admissibility of Allen's prior felony conviction under I.R.E. 609(b)--which applies when the conviction is more than ten years old or if more than ten years have passed since the witness was released from confinement, whichever is later--because the earliest Allen could have been released from confinement would have been May 2015, "well within ten years of [] LaPlante's March 11-14, 2023 trial."

Idaho Rule of Evidence 609(b) reads:

> This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

If properly calculated based on Allen's release from confinement, LaPlante argues, the district court would have found Allen's release was well within ten years of LaPlante's trial and therefore implicated I.R.E. 609(a) rather than 609(b).

Idaho Rule of Evidence 609(a) provides, in pertinent part:

For the purposes of attacking a witness's character for truthfulness, evidence of the fact that the witness has been convicted of a felony and the nature of the felony must be admitted if elicited from the witness or established by public record, but only if the court determines in a hearing outside the presence of the jury that the fact of the prior conviction or the nature of the prior conviction, or both, are relevant to the witness's character for truthfulness and that the probative value of admitting this evidence outweighs its prejudicial effect to the party offering the witness.

LaPlante would have preferred the conviction be analyzed under section (a) because unlike section (b), section (a) does not require the support of specific facts and circumstances in support of the evidence's probative value. I.R.E. 609. However, at trial, LaPlante's counsel stated, "we do understand that [the conviction] is older than ten years." LaPlante also made no objection to the district court's statement that the offense was more than ten years old. Furthermore, when the district court stated that it needed to be presented with specific facts and circumstances regarding the probative value of Allen's robbery conviction, which was relevant only to an I.R.E. 609(b) analysis, LaPlante again did not object or argue that the district court was applying the wrong subsection of I.R.E. 609.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). A party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing or a party preserves an issue for appeal if the trial court issues an adverse ruling. *State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022). LaPlante did not make any argument as to the date Allen was released or that I.R.E. 609(a) should apply, even after the district court provided LaPlante with the opportunity for argument. It was at that moment that LaPlante had the responsibility to object to the district court's analysis to preserve the issue for appeal. *See State v. Barr*, 166 Idaho 783, 786-87, 463 P.3d 1286, 1289-90 (2020). In LaPlante's case, there was no objection to Allen's conviction being more than ten years old and there was no adverse

ruling because the district court did not rule on the evidence's admissibility under I.R.E. 609(a). Consequently, the argument is not preserved.

But even if preserved, LaPlante's argument is barred by the doctrine of invited error. The doctrine of invited error applies to estop a party from asserting an error when that party's conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). The purpose is to prevent a party who caused or played an important role in prompting the trial court to take action from later challenging that decision on appeal. *Barr*, 166 Idaho at 786, 463 P.3d at 1289. In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996).

Below, the district court applied I.R.E. 609(b) only after stating, "it's undisputed that this conviction is more than ten years old; and so what that does is that takes us down to evidence Rule 609(b) which talks about what is required in order to admit it." Thus, LaPlante's agreement about the age of Allen's conviction played an important role in causing the district court to look at I.R.E. 609(b) rather than I.R.E. 609(a). Put another way, LaPlante's agreement that Allen's conviction was more than ten years old induced any alleged error because it caused the district court to analyze the applicability of I.R.E. 609(b) rather than I.R.E. 609(a). "Errors consented to, acquiesced in, or invited are not reversible." *State v. Abdullah*, 158 Idaho 386, 421, 348 P.3d 1, 36 (2015). Accordingly, LaPlante's argument that I.R.E. 609(a) governs is barred by the doctrine of invited error.

Because LaPlante's argument of error is either waived or invited, it is not addressed further.

## IV.

## CONCLUSION

LaPlante has failed to show that the district court erred in denying his motion to suppress, erred in denying his I.C.R. 29 motion for judgment of acquittal, erred in instructing the jury, or erred by excluding evidence of Allen's prior robbery conviction. Therefore, LaPlante's judgment of conviction, and the district court's denial of LaPlante's motion to suppress, are affirmed.

Chief Judge TRIBE and Judge LORELLO, CONCUR.

16